IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ATLANTIC SPECIALTY INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civ. Act. No. 1:26-cv-187-TFM-B |
| APEX CONTRACTING SERVICES, LLC; ZACHARY M. BELL; and KELLY L. SHIRK, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is the Plaintiff's *Motion for Preliminary Injunction and Specific Performance as to Collateral Security Deposit and Brief in Support* (Doc. 10, filed 6/4/26) in which the Plaintiff Atlantic Specialty Insurance Company ("Plaintiff" or "ASIC") moves, pursuant to Fed. R. Civ. P. 65, for a preliminary injunction requiring Defendants Apex Contracting Services, LLC ("Apex") and Zachary M. Bell ("Bell") (collectively "Defendants")[1] to collateralize and protect it against loss, as required by equity and contract. Specifically, ASIC seeks an injunction requiring Apex and Bell to deposit with ASIC $1,400,000.00 as collateral to protect ASIC from its anticipated loss on the bonds issued in favor of Defendant Apex. *Id*. Further, Plaintiff requests that Defendants Apex and Bell be required to issue a verified accounting of their assets, submit to a review of their books and financial records, and be enjoined from making any asset transfers or encumbering assets other than in the ordinary course of business except as approved in advance by ASIC. Having considered the motion, response, reply, and the evidence and argument presented at the hearing, the Court finds that the evidence shows that, with a small adjustment in the amount

[1] For purposes of this motion, Defendant Kelly Shirk is not at issue. *See* Doc. 36.

to be deposited, ASIC is entitled to injunctive relief pending a full trial on the merits of this case and the motion is **GRANTED in part and DENIED in part**. The motion is granted to the extent the Court finds a preliminary injunction is warranted. The motion is denied to the extent it requests relief in addition to the relief the Court grants as laid out below.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332. The parties do not contest personal jurisdiction or venue, and there are adequate allegations to support both. The Court has personal jurisdiction over the claims in this action because the events that gave rise to this action are alleged to have occurred within this judicial district. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions that gave rise to this litigation occurred in this judicial district.

## II. BACKGROUND

### A. Factual Background

On May 23, 2024 Apex entered into a subcontract with Third-Party Defendant Crucible Construction, LLC ("Crucible") for the provision and erection of seven metal buildings and foundations for the Foley Public Works Complex in Foley, Alabama, Job # 02-24-008. Doc. 25 at 2. ASIC issued Performance and Payment Bonds to Crucible on Apex's behalf as a subcontractor for this project. *Id*. Bell is the sole and managing member of Apex, and he owns and operates Apex. Doc. 25 at 1-2.

Prior to the issuance of the Bonds, on August 23, 2024 Apex and Bell executed a General Agreement of Indemnity ("GAI") to ASIC. Doc. 25 at 3; Doc. 8-2. The GAI includes an indemnity provision wherein Apex and Bell agree to indemnify ASIC and hold ASIC harmless from any and all loss, cost or expense resulting from the issuance of the Bonds and to deposit collateral in an

amount sufficient to discharge any claim made against ASIC on any Bond, whether ASIC had made any payment or established a reserve. *Id.* Under this indemnity provision, the payment to ASIC may be the amount of the reserve set by ASIC or such amount that ASIC in its sole judgment deems sufficient to protect it from loss. *Id*. Apex and Bell acknowledged within this provision that their failure to pay, immediately on demand, the sum demanded by ASIC will cause irreparable harm for which ASIC has no adequate remedy at law. Apex and Bell also acknowledged that ASIC is entitled to injunctive relief for specific enforcement of the GAI. The GAI also contains a provision that gives ASIC the right to examine the books, records and accounts of Apex and Bell. Doc. 25 at 4.

Crucible issued a notice of termination to Apex and Bell dated February 18, 2026. Doc. 25 at 3. On February 19, 2026, ASIC sent a letter to Apex and Bell demanding the deposit of collateral in the amount of $1,400,000.00 on or before March 6, 2026. Doc. 25 at 4. The demanded sum has not been deposited by Apex and Bell. *Id.* On March 12, 2026, ASIC sent a letter to Apex and Bell requesting certain information and financial records. *Id.*

Since the collateral demand, ASIC has paid out $882,210.15 and testimony at the hearing indicated that it anticipates further loss of $486,960.00, with attorneys' fees and expenses of $30,000.00, for a total of $1,399,170.15. Doc. 42 at 55. Based on the evidence presented at the hearing, and in accordance with express terms of the GAI, ASIC argues is entitled to a collateral deposit in the amount of $1,399,170.15 to cover its current exposure on the Bonds.

**B. Procedural Background**

ASIC filed its Verified Complaint on May 27, 2026 and the Amended Verified Complaint on June 1, 2026. Docs. 1, 8. ASIC filed the instant Motion for Preliminary Injunction on June 4, 2026. Doc. 10. Apex and Bell filed a response, and Plaintiff ASIC filed its reply. Docs. 24, 35.

The Court set the matter for a hearing that convened on August 31, 2026. Docs. 27, 41. The Court heard testimony from Brandon Gardner with ASIC and Zachary Bell for Apex. Upon consideration of the motion, response, reply, and the evidence and argument presented at the hearing, the Court orally granted the motion and enters this written opinion.

## III. STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1322 (11th Cir. 2015); *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011). "The purpose of the preliminary injunction is to preserve the positions of the parties as best we can until a trial on the merits may be held." *Id*. "A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief." *Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010). The decision to grant or deny a preliminary injunction "is within the sound discretion of the district court." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002)

To prevail on an application for a preliminary injunction, a movant must establish: (1) "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [the movant] outweighs whatever damage the proposed injunction may cause [defendants]; and (4) if issued, the injunction would not be adverse to the public interest." *Bloedorn*, 631 F.3d at 1229. The movant bears the burden of persuasion on each element. *State of Fla. v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1279 (11th Cir. 2021).

"Given the limited purpose of a preliminary injunction, and the haste that is often necessary to preserve each party's position, "a preliminary injunction is typically granted following procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ of Texas v. Camenisch*, 451 U.S 390, 395 (1981). "A party thus is not required to prove his case in full at a preliminary-injunction hearing." *Positano Place at Naples I Condo. Assn.*

*v. Empire Indem. Ins. Co.*, 84 F.4th 1241, n.16 (11th Cir. Oct 20, 2023) (quoting *Camenisch*, 451 U.S. at 395.)

**IV. DISCUSSION AND ANALYSIS**

**A. Substantial likelihood of success on the merits**

ASIC seeks specific performance of a collateral security provision contained in the GAI, along with its equitable right to be collateralized. To succeed on a claim for specific performance of a contract, a party must have no adequate remedy at law. *Cincinnati Ins. Co. v. Gilbert*, Civ. Act. No. 4:19-cv-00245-KOB, 2019 U.S. Dist. LEXIS 101485 *11-12, 2019 WL 2514938, at *7 (N.D. Ala. June 18, 2019). Many courts have recognized a surety is entitled to specific performance of collateral security agreements. *See Int'l Fid. Ins. Co. v. Talbot Constr., Inc.*, Civ. Act. No. 1:15-CV-3969-LMM, 2016 U.S. Dist. LEXIS 195304, at *14-22, 2016 WL 8814367, at *6-8 (N.D. Ga. Apr. 13, 2016); *Travelers Cas. & Sur. Co. of Am. v. Indus. Com. Structures, Inc.*, Civ. Act. No. 6:12-cv-1294-Orl-28DAB, 2012 U.S. Dist. LEXIS 145229, at *6-*9, 2012 WL 4792906, at *2-*3 (M.D. Fla. Oct. 9, 2012); *Hanover Ins. Co. v. Holley Constr. Co. & Assocs., Inc.*, Civ. Act. No. 4:11-CV-41(CDL), 2012 U.S. Dist. LEXIS 14526, at 16, 2012 WL 398135, at *6 (M.D. Ga. Feb. 7, 2012); *Int'l Fid. Ins. Co. v. Waterfront Grp. NC, LLC*, Civ. Act. No. 3:11-cv-00116-W, 2011 U.S. Dist. LEXIS 1163112011, at *10-13, 2011 WL 4715155, at *4-5 (W.D. N.C. Oct. 6, 2011); *Devs. Sur. & Indem. Co. v. Elec. Serv. & Repair, Inc.*, Civ. Act. No. 09-21678-CIV, 2009 U.S. Dist. LEXIS 112955, at *2-5, 2009 WL 3831437, at *1-2 (S.D. Fla. Nov. 16, 2009).

This customary agreement between a surety and its principal and indemnitors, characteristic of the industry, "protect[s] [the surety] from the impending risks of liability." *Holley*, 2012 U.S. Dist. LEXIS 14526, at 14; see also *Gilbert*, 2019 U.S. Dist. LEXIS 101485 at 11-12 (granting the surety's request for specific performance and ordering $2,000,000 to be deposited to

the surety as collateral reserve). In light of the legal protections granted to sureties under Alabama law and the enforceability of indemnity agreements like the GAI here, ASIC has shown a substantial likelihood of success on the merits. *See, e.g.*, *SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co*., 931 So.2d 706 (Ala. 2005) ("When a surety satisfies the principal's obligation, it is entitled to reimbursement or restitution from the principal ...."); *Doster v. Continental Cas.Co.*, 105 So.2d 83, 85 (Ala. 1958) ("A surety's right of exoneration is established by our decisions ...."); *Ala. Bank & Tr. Co. v. Garner*, 142 So. 568 (Ala. 1932) ("No principle is more familiar, or more firmly established, than that a surety, after the debt for which he is liable has become due, without paying or being called on to pay it, may file a bill in equity in the nature of a bill quia timet to compel the principal debtor to exonerate him from liability by its payment, provided no rights of the creditor are prejudiced thereby. And in order to maintain such bill it is not necessary for the surety to show any fraudulent disposition of property on the party of the principal or any special reason for fearing a loss.") (emphasis omitted) (citations omitted); *Guarantee Co. North America USA v. Gadcon, Inc.,* 2010 WL 1382343, *2 (S.D. Ala. Apr. 2, 2010). [2]

Apex and Bell admit to execution of the GAI and do not dispute its validity. ASIC performed its duties under the GAI by issuing the Bonds on Apex's behalf. The GAI itself, along with applicable law, provides that ASIC is entitled to injunctive relief for specific enforcement of the provisions of the GAI. ASIC therefore has demonstrated that it has a substantial likelihood of success on the merits of its request for injunctive relief.

[2] In addition to a surety's contractual rights under a valid indemnity agreement, Alabama creates a statutory right to reimbursement. See Ala. Code § 8-3-5 (1975).

**B. Irreparable Harm**

An irreparable injury is one that is actual and imminent (not remote or speculative) and one for which there is no adequate remedy at law. *Swain v. Junior*, 961 F.3d 1276, 1292 (11th Cir. 2020); *Bolin v. Story*, 225 F.3d 1234, 1242 (11th Cir. 2000). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987) (citing *Cate v. Oldham*, 707 F.2d 1176, 1189 (11th Cir. 1983).

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Sampson v. Murray*, 415 U.S. 61, 90 (1974). To show ASIC has suffered irreparable injury, it cites to certain provisions in the indemnity agreement, which read in relevant part:

> **INDEMNITY TO SURETY**: Indemnitors agree to pay to Surety upon demand:
> 1. All loss, costs and expense of whatsoever kind and nature, including court costs, attorney fees [. . .], in house fees, consultant fees, investigative costs and any other losses, costs or expenses incurred by Surety by reason of:
>
> > a. Surety having executed, provided or procured any Bond;
> > b. any Default under this Agreement by any of the Indemnitors;
> > c. Surety enforcing any of the covenant or conditions of this Agreement;
> > d. Surety conducting any investigation, obtaining or attempting to obtain a release, or recovering or attempting to recover loss or unpaid premium in connection with any Bonds; and/or
> > e. Surety prosecuting or defending any action or claim in connection with any Bonds executed provided or procured on behalf of Principal or Indemnitors, whether Surety at its sole option elects to employ its own counsel, or permits or requires Indemnitors to make arrangments for Surety's legal representation. In addition the Indemnitors agree to pay Surety interest on all disbursements made by Surety in connection with such loss, costs and expenses incurred by Surety at the maximum rate permitted by law calculated from the date of each disbursement;
>
> 2. Any amount sufficient to discharge any claim made against Surety on any Bond, whether Surety will have made any payment or established any reserve therefor. Such payment shall be equal to the larger of (a) the amount of any reserve set by the Surety, or (b) such amount as the Surety, in its sole judgment, shall deem is

> sufficient to protect it from loss. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any Bond. Surety shall have no obligation to invest or provide a return on the funds deposited. The Indemnitors acknowledge that their failure to pay, immediately on demand, that sum demanded by Surety will cause irreparable harm for which Surety has no adequate remedy at law. The Indemnitors confirm and acknowledge that Surety is entitled to injunctive relief for specific enforcement of the foregoing provision.

Doc. 8-2 at 2.

The Court in *Dragon Jade International, Ltd. v. Ultroid, LLC*, was confronted with a similar argument to ASIC's that a contractual provision creates a presumption of irreparable harm or compels a court to find such and, after a review of relevant cases, could not find support for the argument. Civ. Act. No. 8:17-cv-2422-T-27TBM, 2018 U.S. Dist. LEXIS 66715, at *10-11, 2018 WL 1833169, at *4 (M.D. Fla. Jan. 30, 2018) (hereinafter, "*Dragon Jade*") (collecting cases). The *Dragon Jade* Court noted the plaintiff did not cite authority to support its argument and found such contractual provisions were relevant but did not control the issue of whether there is irreparable harm. *Id*. This Court joins in the finding of the *Dragon Jade* Court, and therefore, ASIC must show irreparable harm beyond the contractual provision that states Apex and Bell acknowledge their failure to deposit collateral security causes irreparable harm.

However, ASIC further argues it will suffer irreparable harm because it will continue to be exposed to claims against the bonds. Many courts have found irreparable injury where the surety continues to be exposed to claims against the bonds. *Phila. Indem. Ins. Co. v. Therma Seal Roof Sys., LLC*, Civ. Act. No. 21-80306-CIV-MARRA, 2022 U.S. Dist. LEXIS 95297, at *11-14, *2022 WL 1664183, at *4-*5 (finding irreparable harm where the plaintiff made a collateral security demand while claims were outstanding against the bonds); *Frankenmuth Mut. Ins. Co. v. Pac Comm, Inc.*, Civ. Act. No. 1:20-cv-24064-LENARD/LOUIS, 2021 WL 1204975, at *5-*6 (S.D. Fla. Mar. 19, 2021) ("Though not dispositive, it warrants noting that protection against the risk of

ongoing exposure like the kind Plaintiff faces now was the express purpose of the collateral security provision in the Indemnity Agreement, and to deny Plaintiff the right to collateral would be to deny it the benefit of its bargain under the contract."); *Guarantee Co. of N. Am. USA v. MIK, LLC*, Civ. Act. No. 1:18-cv-60825-UU, 2018 WL2018 WL 4208241, at *3 (S.D. Fla. June 26, 2018) ("Courts regularly hold that there is no adequate remedy at law for the lack of collateral security payments while claims are pending."); *SureTec Ins. Co. v. Eternity LLC*, Civ. Act. No. 1:18-cv-1247-ACA, 2018 U.S. Dist. LEXIS 194884, at *7-*8, 2018 WL 6001103, at *3 (N.D. Ala. Nov. 15, 2018) ("Therefore, damages available after trial and judgment, even if including costs and interest, are of little use to SureTec when it is responsible for investigation, defending, and paying claims on bonds in the present and this is true for losses that SureTec has already paid." (alterations adopted) (citation and internal quotation marks omitted)).

In this instance, ASIC lacks an adequate remedy at law to enforce its equitable rights under the GAI and will continue to be exposed to claims against the bonds until it obtains adequate security. Thus, ASIC would suffer irreparable injury absent a preliminary injunction requiring Apex and Bell to deposit collateral and furnish access to Apex's books and records.

**C. Balance of Equities and Public Interest**

The threatened harm to ASIC if the collateral security provision is not enforced outweighs any burden Apex and Bell would suffer from the injunction. Bell testified at the hearing that depositing collateral in the amount requested by ASIC would limit Apex's ability to continue its business and risk bankruptcy by Apex and Bell. He further testified to the numerous lawsuits and judgments pending against Apex at this time. Despite this financial difficulty, ASIC is left exposed for $1,399,170.15 on obligations that Apex was supposed to meet on the Foley Public Works

project. Apex was responsible for paying its vendors and for completing the project, but it did neither, leaving ASIC had to step in and make good on those obligations.

> Specific performance of a collateral security provision is necessary "to protect three interests of the surety: the bargained-for benefit of collateral security, avoidance of present exposure to liability during pending litigation against indemnitors, and avoidance of risk that, should indemnitors become insolvent, the surety will be left as a general unsecured creditor, frustrating the purpose of the indemnity agreement."

*Argonaut Ins. Co. v. Summit Concrete, Inc.*, 647 F. Supp. 3d 1228, 1234 (N.D. Ala. 2022) (quoting *Talbot Constr., Inc.*, 2016 U.S. Dist. LEXIS 195304, 2016 WL 8814367, at *7). While Bell has indicated that depositing the collateral security with Apex would cause severe financial strain and risk harm to Apex, ultimately that is a burden for which Apex and Bell bargained when they entered the GAI. Thus, the threatened harm to ASIC outweighs any burden Apex and Bell would suffer from the requested injunction.

Finally, the requested injunction promotes the public interest in enforcing contracts and maintaining the solvency of surety companies that support public construction projects. *See Argonaut Ins. Co.*, 647 F. Supp. 3d at 1234; *SureTec Ins. Co.*, 2018 U.S. Dist. LEXIS 194884, at *9-*10, 2018 WL 6001103, at *3. The Court finds the injunction is not adverse to the public interest; it merely enforces the valid contract between ASIC and Apex and Bell.

## IV. CONCLUSION:

Accordingly, the Court finds ASIC is entitled to injunctive relief pending a full trial on the merits of this case. Plaintiff's *Motion for Preliminary Injunction and Specific Performance as to Collateral Security Deposit and Brief in Support* (Doc. 10) is **GRANTED in part** and the Court orders as follows:

1. Apex and Bell shall deposit collateral with ASIC in the sum of $1,399,170.15 by **Spetember 21, 2026**;

2. Apex and Bell shall not sell, transfer, alienate, or otherwise encumber any of their assets other than in the ordinary course of business, unless approved in advance by ASIC or the Court, until the required collateral is posted;

3. Apex and Bell shall provide ASIC with access to their books and records in accordance with terms of the GAI and as ordered by the Court during the hearing held on August 31, 2026.

The motion is **DENIED in part** to the extent that it requests any relief outside of the relief provided in this order.

**DONE** and **ORDERED** this 14th day of September, 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE